IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case No. 07-80486-civ-MIDDLEBROOKS/JOHNSON

LEXISNEXIS RISK AND
INFORMATION ANALYTICS
GROUP INC.,

REED ELSEVIER INC., and

SEISINT, INC.,

        Plaintiffs,

v.

PAUL COLANGELO,

        Defendant.
_____/

## DECLARATION OF JOHN CASCIANO

COMES NOW, JOHN CASCIANO, who, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1. I am over the age of eighteen (18) and have personal knowledge of the statements contained in this Declaration.

2. I am the Senior Vice President and Chief Operating Officer for LexisNexis Special Services Inc. and have served in this capacity since July 2006. For the great majority of my professional career, I served in the military and retired with the rank of Major General in the United States Air Force.

3. I worked with Paul Colangelo ("Colangelo") and interacted with him on a frequent basis. At the time of his resignation, Colangelo was the Vice President – Advanced Government Solutions ("AGS") responsible for leading the sales effort with respect to federal, state and local government agencies for LN Risk & Information Analytics Group Inc., LexisNexis a division of Reed Elsevier Inc. and Seisint, Inc. (collectively referred to as the "LN Risk & Information Group" or the "LN Group").

4. Colangelo was also a member of the AGS Executive Team, a group of high level executives involved in strategy, financial and market planning, product development, revenue decisions, and others for the AGS portion of the LN Group. Colangelo was a key contributor to the Executive Team and was heavily involved in developing the business strategy for AGS until his resignation in May 2007.

5. As the VP-AGS, Colangelo was provided with a company-issued laptop computer as well as a company-issued Blackberry device. Additionally, Colangelo was provided access to a secure server containing LN Group's electronically stored information.

6. Colangelo, by virtue of his executive position with the LN Group, had extensive access to LN Group's confidential and proprietary information (which is generally access restricted by permissions related to user identification). Colangelo had access to LN Group's business plans, market strategy information, customer lists, Siebel Funnel Review documents, Account Overview documents, periodic revenue reports, documents regarding potential merger and acquisition targets, product development efforts and other sensitive proprietary information.

7. I have reviewed the Declaration of J. Christopher Racich and the Excel Spreadsheet attached thereto, and I am truly amazed by the number and nature of proprietary documents that, based on that Declaration, were taken by Colangelo prior to his departure from LN Group (the Downloaded Documents").

8. One of the Downloaded documents is titled "2006 Acquisition Candidates_V2_Govt". That document details companies that LN Group was evaluating as potential acquisition candidates and continues to examine as potential acquisitions. Disclosure of that list and use of it by a competitor could seriously impede any effort by LN Group to acquire any of those firms or could raise our costs of doing so. It is a highly

confidential list shared with LN Group among a small group of employees on a need to know basis.

9. Another of the Downloaded documents is titled "2006_Risk_Government_Market_Plan_v11". That document specifies in great detail the AGS plans for matters such as product development, pricing, competitive opportunities and the like. It is a detailed roadmap to how we sought to go to market in 2006, describing marketing channel partners, actual and potential alliances and pricing strategies. Notably, the description of "Overall Competitive Threat in the On-Line/Data" category specifically includes LocatePlus in the list of LN Group's eight top competitors. This document would be extremely damaging information in the hands of a competitor.

10. While I have not yet reviewed the substance of each of the downloaded documents, I am familiar with the subject matter referenced in the titles and believe that many of the documents are of the sort described in Paragraph 6.

11. LN Group has invested considerable time, resources and capital in establishing and protecting its proprietary information, as well as in cultivating relationships with its clients in this highly competitive industry.

12. I first learned that Colangelo was resigning from LN Group on or about May 18, 2007. He told me in a brief visit to my office that he was looking for "new challenges" and that he was going into a "commercial business." He did not disclose that he had accepted a position with one of our primary market competitors.

13. It is my current understanding from reviewing a publicly filed document that LocatePlus filed with the SEC that Colangelo is now President and CEO of LocatePlus in addition to being a member of its Board of Directors.

14. LocatePlus is an undisputed competitor with respect to public record solutions in the U.S. risk management industry. As the President and CEO of LocatePlus, Colangelo will be involved in all aspects of their business including sales,

marketing, product development, and overall business strategy, including possible merger and acquisition activities.

15. Based on my understanding of his current position with LocatePlus, his extensive knowledge of LN Group's business, and the evidence regarding the removal and transmission of sensitive business information, it is my belief that Colangelo will inevitably disclose or use LN Group's confidential and proprietary information and trade secrets if he is permitted to continue in LocatePlus's employ.

AND FURTHER, THIS DECLARANT SAYETH NOT.

June 15, 2007
Date

JOHN CASCIANO

\4620672.1